UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMUEL S.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-00990-MJD-SEB |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration,[2] | ) ) ) ) |
| Defendant. | ) |

**ENTRY REVIEWING THE DEPUTY COMMISSIONER'S DECISION**

Plaintiff Samuel S. applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on November 21, 2014, alleging an onset date of June 1, 2014. [Filing No. 7-4 at 13.] His applications were initially denied on March 11, 2015, [Filing No. 7-6 at 4; Filing No. 7-6 at 13], and upon reconsideration on April 15, 2015, [Filing No. 7-6 at 24; Filing No. 7-6 at 31]. Administrative Law Judge Albert J. Velasquez (the "ALJ") held a hearing on February 15, 2017. [Filing No. 7-4 at 29-50.] The ALJ issued a decision on April 26, 2017, concluding that Samuel S. was not entitled to receive DIB or

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Nov. 26, 2018). The case caption has been updated to reflect Ms. Berryhill's current official title.

1

SSI. [Filing No. 7-4 at 10.] The Appeals Council denied review on February 23, 2018. [Filing No. 7-2 at 2.] On March 29, 2018, Samuel S. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.] For the reasons set forth below, the Deputy Commissioner's decision is **AFFIRMED**.

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id. at 217*.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[3] "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

---

[3] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Samuel S. was 51 years of age at the time he applied for DIB and/or SSI. [Filing No. 7-7 at 2.] He has completed at least a high school education and previously worked as a truck driver. [Filing No. 7-4 at 21.][4]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Samuel S. was not disabled. [Filing No. 7-4 at 22.] Specifically, the ALJ found as follows:

- At Step One, Samuel S. had not engaged in substantial gainful activity[5] since June 1, 2014, the alleged onset date. [Filing No. 7-4 at 15.]

- At Step Two, he had the following severe impairments: "hypothyroidism, major dysfunction of a joint (right hand), ulnar neuropathy, diabetes mellitus, degenerative disc disease, and osteoarthritis." [Filing No. 7-4 at 15 (citations omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-4 at 16.]

- After Step Three but before Step Four, he had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently. He can stand and/or walk for a total of six of eight hours and sit for six of eight hours provided the work requires no climbing of ropes, ladders or scaffolds and no more than occasional climbing of stairs or ramps. He cannot kneel or crawl. He retains the ability to perform gross manipulations with both hands. He can occasionally finger with the right hand. He should avoid work at unprotected heights. He cannot perform repetitive forceful gripping or operation of vibrating tools." [Filing No. 7-4 at 17.]

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Samuel S.'s RFC, he was incapable of performing his past relevant work as a truck driver. [Filing No. 7-4 at 21.]

- At Step Five of the analysis, relying on VE testimony and considering Samuel S.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision as a housekeeper cleaner, mail clerk, and office machine operator. [Filing No. 7-4 at 21-22.]

## III.
### DISCUSSION

Samuel S. makes two assertions of error regarding the ALJ's decision, that the ALJ failed to (1) properly address the limitations that he has as result of severe fatigue and (2) explain how the evidence does not support further limitations with the use of his right hand. The Court will consider each issue in turn.

**A. Fatigue**

Samuel S. asserts that he reported symptoms of fatigue, drowsiness, chronic tiredness, and decreased energy throughout the medical record that were not properly addressed by the ALJ in his decision, either when assessing Samuel S.'s RFC or conveying limitations to the VE. [Filing No. 12 at 12-14.] Consistent with his testimony that he stopped working as a truck driver because he was falling asleep, Samuel S. notes that a consultative examiner, Andrew J. Koerber, M.D., recommended that he not operate a motor vehicle. [Filing No. 12 at 12 (citing Filing No. 7-9 at 53 (Dr. Koerber's medical source statement)).] Samuel S. reported side effects of drowsiness and tiredness from taking his prescribed medication, which he contends the ALJ acknowledged in the decision, but did not explain how further limitations were discounted. [Filing No. 12 at 12.]

While Samuel S. does not articulate his argument as a challenge to the ALJ's subjective symptom evaluation, the Court recognizes that Samuel S.'s allegations of fatigue appropriately fall under such an assessment. As noted above, the Seventh Circuit requires the Court to accord the

ALJ's credibility determination considerable deference, overturning it only if is it patently wrong. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008); *Prochaska,* 454 F.3d at 738 ("[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed."). However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Clifford,* 227 F.3d at 872.

On March 28, 2016, Social Security Ruling ("SSR") 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong.

The Court does not find that the ALJ's subjective symptoms evaluation was patently wrong, particularly as it applies to Samuel S.'s statements concerning symptoms of fatigue. During the hearing, the ALJ asked Samuel S. if he knew what was causing his fatigue and whether

6

he had talked to his doctors about it. [Filing No. 7-4 at 31.] Samuel S. testified in response, "Yeah. They told me that when I was diagnosed with hyperthyroidism, so much damage was done to my body because I let it go on for so long, not knowing what was really going on with me." [Filing No. 7-4 at 31.] However, the record does not fully support his testimony. The ALJ found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." [Filing No. 7-4 at 18.] Specifically, the ALJ explained that in July 2015, an endocrinologist treating Samuel S.'s thyroid issue had "noted his thyroid indices had improved since starting medication (Exhibit 11F at 2-4)." [Filing No. 7-4 at 19.] The treatment record further indicated the specialist's opinion that his "symptoms [including fatigue] are the same and seem unrelated to thyroid." [Filing No. 7-12 at 9.] The ALJ noted that Samuel S. continued to complain of fatigue and was advised by his primary care physician, Joy Crovello, M.D., to exercise regularly. [Filing No. 7-4 at 19.] Despite the recommendation, Samuel S. admitted at a follow-up six months later that he had gained weight because of decreased exercise, increased food intake, and the limiting effects of pain. [Filing No. 7-4 at 19.] The ALJ noted that "Dr. Crovello suspected a strong component of deconditioning contributed to his… [symptoms]." [Filing No. 7-4 at 19 (citing Filing No. 7-11 at 55 (Dr. Crovello also discussed the "role of proper diet (low salt, low cholesterol), regular exercise and healthy weight" in management of his symptoms.)).] Contrary to Samuel S.'s argument, the Court finds adequate discussion of his allegations of fatigue in the ALJ's written decision, which allows the Court to trace the ALJ's logic.

Samuel S. does not specifically contend that the ALJ's subjective symptom evaluation was patently wrong, nor does he discuss the relevant factors considered by the ALJ in his decision.

7

The Court's own review does not find patent error. Contrary to Samuel S.'s testimony, as noted by the ALJ, the record does not support that the severe fatigue was attributable to Samuel S.'s thyroid condition. "An individual's symptoms, such as […] fatigue […] will not be found to affect the ability to perform work-related activities for an adult […] unless medical signs or laboratory findings show a medically determinable impairment is present." SSR 16-3p, 2017 WL 5180304, at *3. However, to the extent that Samuel S.'s fatigue could be attributable to his other severe impairments including the limiting effects of his pain, rather than simply his chosen activity level, the ALJ was able to reasonably determine that his testimony was not entirely credible because of his failure to follow his provider's treatment recommendations. *Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001).

Relatedly, the ALJ is required to consider "the side effects of any medication" when evaluating the claimant's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *8. However, as Samuel S. acknowledges, the ALJ specifically addressed his complaints of drowsiness and tiredness "as side effects of his medications (Exhibits 6E at 7; 8E at 8)." [Filing No. 7-4 at 20.] The ALJ again referenced Dr. Crovello's opinion in response to those complaints, concluding that deconditioning was a strong component contributing to his symptoms. [Filing No. 7-4 at 20.] The Court finds that the ALJ had sufficient evidence to reasonably conclude that fatigue was not solely a side effect of necessary medication use.

Notably, with one exception discussed below, the record does not contain any supportive medical opinion assessing further limitations based on fatigue than those included in the ALJ's RFC. "But we cannot reasonably expect an ALJ to 'intuit' a functional limitation from the whole record, nor can we look at the record anew to draw one out. [Samuel S.] bears the burden of showing that [he] had impairments that affected [his] ability to work." *Richards v. Berryhill*, No.

8

18-1109, 2018 WL 3853525, at *4 (7th Cir. Aug. 13, 2018) (unpublished) (citing *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004)). "But pointing to various diagnoses and complaints and saying that they might hinder [Samuel S.] is insufficient to establish the existence of a functional limitation." *Richards*, 2018 WL 3853525, at *4 (citing *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005)). With the underlying authority in *Gentle* and *Scheck* in mind, the Court finds Samuel S.'s analogy to *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) unavailing. In *Allensworth*, the Circuit analyzed the ALJ's explanation for discounting Allensworth's credibility in the context of the ALJ also giving little weight to a medical source statement on the same point, that the claimant "suffers fatigue and somnolence from his pain medications and that those conditions markedly limit his ability to concentrate and to work at a consistent pace." *Allensworth*, 814 F.3d at 834. Here, there is no supportive opinion that Samuel S.'s ability to sustain work would be specifically limited by his allegations of fatigue.

Similarly, Samuel S. argues that the ALJ erred by failing to include further limitations in his RFC finding and when soliciting testimony from the VE to meet the ALJ's burden at Step Five. [Filing No. 12 at 13-14.] Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, at 333 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473–74 (7th Cir. 2004). Furthermore, the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *7.

To a limited extent, the Court agrees with Samuel S. that the ALJ erred. The ALJ acknowledged that the consultative examiner, Dr. Koerber, had recommended that Samuel S.

9

"should not drive due to drowsiness and decreased energy (Exhibit 4F)." [Filing No. 7-4 at 19] (citing Filing No. 7-9 at 53 (Dr. Koerber's medical source statement that because of "his drowsiness and decreased energy level, it is recommended that he not operate a motor vehicle unless these symptoms improve."))]. The ALJ did not include any corresponding limitation in his RFC, nor did he explain why the opinion was not adopted.

However, the Court agrees with the Deputy Commissioner that the error was harmless. [Filing No. 13 at 9.] "But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010)). Here, the ALJ concluded on other grounds that Samuel S. would not be able to return to his past relevant work as a truck driver. [Filing No. 7-4 at 21.] Still, the ALJ denied the claim at Step Five upon finding that Samuel S. could perform other work in the national economy as a housekeeper cleaner, mail clerk, and office machine operator. [Filing No. 7-4 at 22.] The Court agrees with the Deputy Commissioner, based on a review of the Dictionary of Occupational Titles, that none of those jobs require operation of a motor vehicle. [Filing No. 13 at 9; *see* DICOT 323.687-014 (G.P.O. 1991), 1991 WL 672783 (Cleaner, Housekeeping); DICOT 209.687-026 (G.P.O. 1991), 1991 WL 671813 (Mail Clerk), DICOT 207.685-014 (G.P.O. 1991), 1991 WL 671745 (Photocopying-Machine Operator).] Samuel S. did not file a reply rebutting the Deputy Commissioner's harmless error argument. Even had the ALJ adopted the limitation, the Court can say with confidence that the ALJ would have found Samuel S. capable of performing the same other work titles.

Furthermore, unlike the line of cases that Samuel S. depends upon, he has not identified any specific limitation(s) that the ALJ found to be supported by the record but failed to include in

his RFC finding. For example, in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), the Seventh Circuit credited an argument that "the ALJ erred in omitting her moderate limitation on concentration, persistence and pace from the hypothetical posed to the VE, even though the ALJ found that such a limitation exists." The basis is important, because the "ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, there is no indication in the decision that the ALJ credited any additional limitations because of Samuel S.'s symptoms of fatigue. Accordingly, based on the foregoing finding that the ALJ's subjective symptom evaluation was not patently wrong, the Court does not find any basis to remand the ALJ's decision based on Samuel S.'s fatigue-related arguments.

### B. Right Hand Use

Samuel S. argues that the ALJ should have given significant weight to Dr. Koerber's consultative opinion that he can only handle objects with his right hand for a short amount of time. [Filing No. 12 at 15.] Samuel S. observes that the ALJ was aware of the relevant limitation and gave Dr. Koerber's opinion "some weight," based on an observation that the record had been subsequently updated, which he contends did not demonstrate any improvement with the use of his right hand. [Filing No. 12 at 15.]

In relevant part, the ALJ's RFC finding including the following manipulative limitations, that Samuel S.: (1) "retains the ability to perform gross manipulations with both hands," (2) "can occasionally finger with the right hand," and (3) "cannot perform repetitive gripping or operation of vibrating tools." [Filing No. 7-4 at 17.] Dr. Koerber's medical source statement described the relevant limitations he assessed as follows:

> Based on today's medical findings, it appears that [Samuel S.] has the ability to perform activities involving sitting, standing, moving about, lifting, carrying,

11

handling objects with his right hand for a short amount of time (including writing, zipping, buttoning, and picking up small objects), handling objects with his left hand, kneeling/squatting, hearing, and speaking. With findings on physical examination as detailed above, it would be reasonably expected that [Samuel S.] would have difficulty performing activities involving handling objects with his right hand for a repetitive amount of time. […] He did demonstrate evidence of neurologic deficit with grip strength being 4/5 in the right hand. He did not demonstrate evidence of sensory loss or reflex abnormality. He has full range of motion in all joints. […] He has normal gross manipulation and 5/5 grip strength in the left hand. He has 4/5 grip strength in the right hand, but he has normal gross manipulation in the right hand.

[Filing No. 7-9 at 53.]

The crux of Samuel S.'s argument is that he believes that the RFC did not adequately account for Dr. Koerber's assessed limitation that he "has the ability to perform activities involving […] handling objects with his right hand for a short amount of time . . . ." [Filing No. 7-9 at 53.] As noted above, the ALJ is required to include in his RFC finding all the limitations that are supported by the record and must further explain why he discounted any medical opinion that conflicts with his RFC. Samuel S. suggests that Dr. Koerber's opinion assessed a greater level of limitation with "handling," than the ALJ included in his RFC. Samuel S.'s representative asked the VE if the hypothetical "were modified so that we had, not only occasional fingering, but also occasional handling, would that make difference in your testimony?" [Filing No. 7-4 at 49.] The VE testified that occasional handling and fingering would eliminate the other work that would later form the basis of the ALJ's Step Five denial and would, in fact, eliminate all light exertion work.[6] [Filing No. 7-4 at 49.]

---

[6] Based on Samuel S.'s age, work experience, and RFC, if he were unable to perform his past relevant work and was further unable to perform any work at the light exertional range, effectively limiting him to sedentary work (to the extent it would be available with his limitations), the Medical-Vocational Guidelines would direct a finding that he was "[d]isabled." *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rule 201.14.

On the surface it appears that Samuel S.'s argument has merit. The RFC did not include any limitations with "handling" and Dr. Koerber's opinion appears to include a limitation with "handling objects with his right hand for a short amount of time." However, the apparent inconsistency between the RFC and that portion of Dr. Koerber's opinion (when considered in a vacuum) is rooted in the ambiguity of describing the limitations in terms of handling and fingering, rather than describing those limitations in terms of fine and gross manipulation.

Manipulative limitations can be differentiated between fine and gross manipulation or alternatively between handling and fingering (as well as other more specific descriptions depending on the function that is limited, like feeling). *See e.g.*, *McKinzey*, 641 F.3d at 887-88 (A March 2005 occupational evaluation described limitations with fine and gross manipulation, compared to an April 2005 opinion of Dr. Francis that limited the claimant to occasional feeling, fingering, or handling.) In social security disability adjudications, manipulative limitations will often be described in vocationally relevant terms that solely differentiate between fine and gross manipulation. *See e.g.*, *Overman v. Astrue*, 546 F.3d 456, 461 (7th Cir. 2008) (using fine and gross "discrimination" rather than manipulation); *Ross v. Barnhart*, 119 F. App'x 791, 796 (7th Cir. 2004) (differentiating between "occasional fine manipulation" and a separate inability to "perform repetitive grasping/gross manipulation"). Sometimes "handling," in place of using the term gross manipulation, is distinguished from "fine manipulation." *See e.g.*, *Simpson v. Barnhart*, 91 F. App'x 503, 506 (7th Cir. 2004). In *Cannon v. Harris*, 651 F.2d 513, 518 (7th Cir. 1981), a vocational specialist provided an opinion that preserved "gross manipulations involving simple grasping with both hands," also alternatively referred to as "routine handling," combined with the inability to perform "fine manipulations," would still allow for the performance of specific jobs in the light exertional range as a floor stock person, hand and machine paster, and bottom painter. In

13

the same way that handling and gross manipulation can be used alternatively to refer to the same function, fingering is an alternative term used to describe fine manipulation.

The Bureau of Labor Statistics ("BLS") is a unit of the United States Department of Labor that serves as the "principal fact-finding agency for the federal government in the field of labor, economics, and statistics." Department of Labor, https://www.dol.gov/general/topic/statistics (last visited Nov. 27, 2018). The BLS completes occupational requirements surveys that separate the physical demands into "elements [to] provide a systematic way of describing the physical activities that an occupation requires of a worker." BLS, https://www.bls.gov/ncs/ors/physical-072015.htm (last visited Nov. 27, 2018). The BLS uses the term "fine manipulation," defined as "[p]icking, pinching, or otherwise working primarily with fingers rather than the whole hand or arm as in gross manipulation," as distinguished from "gross manipulation," defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand(s). Note: Fingers are involved only to the extent that they are an extension of the hand." *Id*.

The Court finds that the ALJ's RFC finding was supported by substantial evidence. More specifically, the ALJ's RFC was a reasonable interpretation of the relevant manipulative limitations that Dr. Koerber opined. While Dr. Koerber's assessment described a limitation with "handling objects with his right hand for a short amount of time," the examples that Dr. Koerber included, "(including writing, zipping, buttoning, and picking up small objects)," do not involve handling or gross manipulation, but rather describe physical activities that fall under fingering or fine manipulation. [Filing No. 7-9 at 53.] This is even more apparent when read in the context of the entire opinion. Dr. Koerber's assessment also described that Samuels S. "has 4/5 grip strength in the right hand, but he has normal gross manipulation in the right hand." [Filing No. 7-9 at 53.]

Taken together, it would be reasonable to conclude that fine manipulation was impaired, but gross manipulation was preserved in the right hand.

The ALJ contributed to the confusion by limiting fine manipulation by saying Samuel S. "can occasionally finger with the right hand," but alternatively clarified that he "retains the ability to perform gross manipulations with both hands." [[Filing No. 7-4 at 17](#).] The ALJ appeared to further account for reduced grip strength by adding that he "cannot perform repetitive gripping or operation of vibrating tools." [[Filing No. 7-4 at 17](#).] The ALJ was clearer when describing the limitations to the VE. "And he still has unlimited gross manipulations with both hands. It's just the fine fingering manipulation that is limited with respect to the right hand, and I limited that to occasionally." [[Filing No. 7-4 at 48](#).] The Court does not find any error with how the ALJ described the limitations opined by Dr. Koerber in the RFC, nor in how those limitations were properly communicated to the VE.

To the extent that Samuel S.'s argument could be taken as suggesting that irrespective of Dr. Koerber's opinion, the underlying evidence of record supported a limitation to occasional handling or occasional gross manipulation, the Court will not reweigh the evidence under the standard or review. The ALJ's RFC was based on a consultative examiner's opinion and the record does not contain any opinion suggesting a greater level of limitation with handling or gross manipulation. Accordingly, the Court concludes that the ALJ's RFC was supported by substantial evidence as it pertains to Samuel S.'s use of his right hand.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *[Williams-Overstreet v. Astrue](#)*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes

paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id*. at 274. Taken together, the Court can find no legal basis presented by Samuel s. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

    SO ORDERED.

Dated:  11 JAN 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov